UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KATHY T.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. C26-5341-MLP<br><br>ORDER |

## I. INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating her testimony and the medical opinion evidence, and failing to resolve a conflict between the vocational expert ("VE") testimony and her residual functional capacity ("RFC"). (Dkt. # 8.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 13.) Plaintiff filed a reply. (Dkt. # 14.) Having considered the ALJ's decision, the administrative record

("AR"), and the parties' briefing, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings.[1]

## II. BACKGROUND

Plaintiff was born in June 1970, has a limited education, and has worked as a day care provider. AR at 421, 426. Plaintiff was last gainfully employed in 2014. *Id.* at 420.

On October 27, 2021, Plaintiff applied for benefits, alleging disability as of August 20, 2018. AR at 159. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing on February 15, 2024, the ALJ issued a decision finding Plaintiff not disabled until June 2020, at which point her age category changed, and she became disabled. *Id.* at 173.

Plaintiff appealed the unfavorable portion of the decision to the Appeals Council, which remanded the decision for further proceedings to resolve an apparent conflict between the Dictionary of Occupational Titles ("DOT") and the VE testimony. AR at 185. A new ALJ conducted a second hearing on August 20, 2025, and issued a decision again finding Plaintiff not disabled from August 20, 2018, through June 26, 2020. *Id.* at 17, 34.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, that during the period at issue Plaintiff had the severe impairments of osteoarthritis, obesity, diabetes mellitus, degenerative disc disease, peripheral neuropathy, depressive disorder, and posttraumatic stress disorder. AR at 20. The ALJ also found that Plaintiff had the RFC to perform sedentary work with additional exertional, reaching, environmental, and mental

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

[2] 20 C.F.R. §§ 404.1520, 416.920.

limitations. *Id.* at 22-23. As there were a significant number of jobs in the national economy that Plaintiff could perform, she was not disabled. *Id.* at 32.

As the Appeals Council denied Plaintiff's request for further review, the ALJ's decision is the Commissioner's final decision. AR at 1. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 1.)

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV. DISCUSSION

### A. The ALJ Erred in Evaluating Plaintiff's Testimony

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At her first hearing, Plaintiff generally testified that she stopped working at her home daycare after her father's passing because her depression became overwhelming, she could not pick up kids anymore, and she could not get on the floor to play. AR at 50. She had pain in her hands, hips, back, and knees, and lifting anything over the weight of a gallon of milk caused pain. *Id.* She needed to change positions every 15 minutes. *Id.* at 51. She could not completely close her right hand, and she dropped things frequently. *Id.* Her insulin-resistance caused her blood sugars to be unpredictable. *Id.* at 52. She had complications from diabetes in her left eye, which irregularly impacted her ability to see near and far, and she needed eye surgery before she goes blind. *Id.*

Plaintiff lived alone with her dogs, and family and friends checked in on her periodically. AR at 53. She could not do any cleaning that required getting on her knees, but she was able to vacuum in sections at a time. *Id.* When available she used the in-store scooters to go grocery shopping and got help putting her groceries in the car. *Id.* at 54. Driving back and forth from Seattle was no longer something she could do. *Id.* After her father passed, she could not get out of bed, and she became "extremely paranoid, very edgy[]" and would "cry and cry and cry." *Id.*

at 55. Her medications helped in that she no longer cried or hid away all day, but she was still emotional and had moments of "complete paranoia." *Id.* She had trouble concentrating on one task at a time. *Id.* at 56.

At her second hearing, focusing on the period between August 20, 2018, through June 26, 2020, Plaintiff testified that her health deteriorated after the passing of her father in May 2018. AR at 84. While tax records for her at-home daycare stop in 2014, she continued to run it until August 2018. *Id.* at 87. She does not know what happened to the paperwork because she had "just kind of started giving up[]" around that time. *Id.* at 86-87. Up until she had surgery in 2019, she had difficulty lifting things because of a swollen appendix and a previous surgery which resulted in a football-sized hernia. *Id.* at 88. She had a hysterectomy in 2015, but they were unable to take care of her other stomach issues at the same time. *Id.* at 88-89, 567.

The ALJ considered Plaintiff's testimony and discounted it as inconsistent with Plaintiff's activities and unsupported by the medical record. AR at 23-24. The Commissioner argues that Plaintiff's "ability to act as a caregiver for her parents and walk three dogs daily" reasonably contradicted Plaintiff's testimony, but the record does not support this argument. (*See* dkt. # 13 at 11.) The ALJ specifically delineated activities he considered, and found that evidence that Plaintiff took care of three service dogs, prepared her own meals, did chores with rest breaks, could drive, shop, use a computer and phone, text, count change, lift up to ten pounds, stand for ten minutes, walk for fifteen minutes, and that she got along with everyone, but avoided people, "undermine the weight" that the ALJ gave Plaintiff's testimony. AR at 23-24.

This reasoning is the type that the Ninth Circuit warns against. Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) ("House chores, cooking simple meals,

self-grooming, paying bills, writing checks, and caring for a cat in one's own home, as well as occasional shopping outside the home, are not similar to typical work responsibilities."); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). While an ALJ may reject a plaintiff's testimony based upon daily activities that contradict her testimony, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007), here the ALJ failed to identify any meaningful inconsistency between Plaintiff's testimony and activities, nor does the Commissioner link this evidence to portions of Plaintiff's testimony. *See* AR at 23-24; dkt. # 13 at 10-13; *Collard v. Bisignano*, --- F.4th ----, 2026 WL 2856741, at *3 (9th Cir. 2026) ("The ALJ, however, merely listed a number of activities that [claimant] performs, while failing to acknowledge aspects of the daily activity evidence consistent with [claimant's] claim. That analysis thus failed to meet the high bar set out by our caselaw." (cleaned up)).

Contrary to the Commissioner's argument, the ALJ did not consider Plaintiff's caregiving activities, including for her mother and father, as contradicting her testimony, though he did briefly reference this later in the decision when discussing the medical testimony. AR at 23-25. Nor is it clear from the record what helping care for her mother[3] entailed, and her father passed away prior to the alleged onset date of disability, *compare id.* at 20 *with id.* at 50, 1751. Accordingly, the Court declines the Commissioner's invitation to apply *post hoc* rationale to find that the ALJ did not harmfully err. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995) (Court reviews the ALJ's decision "based on the reasoning and findings offered

---

[3] There are two individuals that the record refers to as Plaintiff's mother. Plaintiff indicated to providers she "had her son after caring for her mother for a year before she died of cancer." AR at 1680. In 2020 Plaintiff's son was 22 years old. *Id.* at 1682. Separately, Plaintiff referred to a person she lived with as "mom" in treatment notes as that was how she viewed the relationship, though they were not biologically related. *Id.* at 1779.

by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.”).

It is further unclear from the ALJ’s decision how any of the named activities contradict Plaintiff’s testimony. The ALJ cites a portion of the record which indicates that Plaintiff has three service dogs that her son walks and helps care for. AR at 443, 477. When Plaintiff testified about her capabilities limited to the relevant time period, she only discussed her depression and difficulty bending and lifting. AR at 84-89. It is not clear how an ability to lift up to ten pounds, stand for ten minutes, vacuum rooms fifteen minutes at a time, or making cereal, frozen meals, or sandwiches for herself contradicted this testimony. *See id.* at 444, 478, 481.

As the ALJ’s stated reasoning regarding Plaintiff’s activities was unsupported, his remaining reasoning regarding the objective medical evidence is insufficient to support his rejection of her testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (“we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.”); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (“lack of medical evidence cannot form the sole basis for discounting pain testimony”). But even if objective medical evidence alone was sufficient to support the decision, the ALJ’s reasoning here falls short.

In discussing the medical evidence, the ALJ found “the objective findings in this case fail to provide strong support for the claimant’s allegations of disabling symptoms and limitations.” AR at 24. That is not the standard for evaluating objective medical evidence in relation to a claimant’s testimony. While “[c]ontradiction with the medical record is a sufficient basis for rejecting a claimant’s subjective testimony[,]” *Carmickle v. Comm’r, Soc. Sec. Admin.*, 533 F.3d

1155, 1161 (9th Cir. 2008), "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). This is what the ALJ has done here. *See* AR at 24-26.

The ALJ in this case merely summarized the medical evidence of record[4] and failed to provide any explanation identifying which portions he found contradicted Plaintiff's testimony. *See Brown-Hunter*, 806 F.3d at 494 (explaining that an ALJ's failure to identify "*which* testimony [he] found not credible, and . . . *which* evidence contradicted that testimony[]" is an error.) (emphasis in original). Indeed, it is not clear that he found any contradiction, just a lack of "strong support" for her testimony, or that the objective medical evidence supports the residual functional capacity he found. AR at 24, 26. Accordingly, the ALJ erred in his evaluation of Plaintiff's testimony.

**B. The ALJ Erred in Evaluating Medical Evidence**

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

---

[4] Further, the summary of medical evidence does not accurately represent the record. For example, the ALJ stated that Plaintiff "reported that before she fell, she was able to sit on a soft surface, walk uphill, lift, and carry." AR at 24. But the cited record indicates that Plaintiff "has been dealing with back pain for years," and that the mechanism of injury was "insidious," although she "did recently fall on stairs and landed on sacrum." *Id.* at 766. While the note does indicate that her level of function before onset included that ability to "sit on soft surface, walk uphill, lift and carry," there is no indication in the notes that "onset" is the date of the fall. *Id.* Indeed, the November 2018 record indicates Plaintiff is being seen for "4-5 month history of bilateral lower leg numbness/tingling[,]" which aligns with Plaintiff's alleged onset date of disability. *Id.*

*1. David T. Morgan, Ph.D.*

The ALJ considered Dr. Morgan's opinion and found it "somewhat persuasive[,]" but unsupported and inconsistent with the medical record. AR at 28. The ALJ found it unsupported as Dr. Morgan "did not explain the opinion" and there were only two abnormal results on the mental status exam. *Id.*

Dr. Morgan opined that Plaintiff had marked limitations in her ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, maintain appropriate behavior in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and set realistic goals and plan independently. AR at 949. She had moderate limitations in all but two of the remaining basic work activities. *Id.* at 948-49. Dr. Morgan based his assessment on Plaintiff's self-reported symptoms and her mental status exam. *Id.* at 947-51. At the appointment, Dr. Morgan opined that Plaintiff's mood was depressed, her memory was abnormal as she could only recall one of three items after a short delay, she had "inadequate performance on digit span forward (4) and backward (2)," and her concentration was abnormal as she could spell world forward but not backwards. *Id.* at 950-51.

The ALJ did not reasonably find that Dr. Morgan's opinion did not support "any more than moderate limitations." AR at 28. "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Nevertheless, Dr. Morgan identified several abnormal

findings on examination. The ALJ did not explain how these were insufficient to support the opined limitations.

Even if the ALJ had properly found only moderate limitations supported, as Plaintiff correctly argues, the VE testified that even moderate limitations in the ability to learn new tasks, make simple work-related decisions, ask simple questions and request assistance, and communicate and perform effectively in the work setting would preclude employment. AR at 101. While the Commissioner is correct that the VE was responding to a question that described moderate limitations as an occasional inability to do the described work functions (dkt. # 13 at 15-16), the ALJ did not include any of the moderate limitations that he apparently found Dr. Morgan's exam supported, *see* AR at 22-23.

The ALJ further found Dr. Morgan's opinion inconsistent with Plaintiff's "reported activities such as performing some household chores, preparing meals, caring for dogs, and driving herself to appointments." AR at 29. As previously discussed, the ALJ did not appropriately consider Plaintiff's activities, nor is it clear how any of these activities contradict a medical opinion which found Plaintiff had significant mental limitations related to work. *See id.* at 948-49. Accordingly, the ALJ erred in his evaluation of Dr. Morgan's opinion.

*2. Vincent Gollogly, Ph.D.*

The ALJ found Dr. Gollogly's opinion partially persuasive, evaluating it in tandem with the opinion of Dr. Eisenhauer, but found that the "severity of these doctors' opinion is not consistent with the claimant's reported activities and limitations." AR at 28. This reasoning does not indicate which portion of Dr. Gollogly's opinion the ALJ found persuasive, and therefore this Court cannot properly review the decision. Further, as discussed above, the ALJ improperly found Plaintiff engaged in a "wide range" of activities, and it is not clear how these activities

could contradict Dr. Gollogly's opinion, which focused on Plaintiff's mental capabilities. *See id.* at 27. As Plaintiff correctly argues, Dr. Gollogly's opinion that Plaintiff "may need occasional support to stay on task," *id.* at 131, would potentially preclude employment based on the VE's testimony that requiring occasional supervisor support to stay on task at "the upper ranges of occasional, maybe 20 to 33% of the time, that would not be acceptable," *id.* at 99. Accordingly, the ALJ harmfully erred in discounting Dr. Gollogly's opinion.

*3. Abbey Howell, LICSWA*

The ALJ considered LICSWA Howell's opinion and discounted it as unsupported. AR at 30. The ALJ reasonably assessed this evidence. LICSWA Howell's opinion is a checkbox form unaccompanied by any comment or explanation, even in the areas provided. *Id.* at 1935-38. It is unclear from the record if LICSWA Howell treats Plaintiff, as her name does not appear anywhere else in the medical record, and Plaintiff has not explained how LICSWA Howell formed her opinion of Plaintiff's functioning. (*See* dkt. # 8 at 14.) The only indication of how LICSWA Howell formed her opinion is a note in response to the question "in your opinion have the limitations expressed above existed since at least August 30, 2018?" to which she replied yes "from documentation and ct. information." AR at 1937. Accordingly, the ALJ did not err in rejecting LICSWA Howell's opinion.

As the ALJ erred in evaluating Plaintiff's testimony and the medical evidence, and thus formulating the RFC, and consequently remand is otherwise required, the Court need not address Plaintiff's argument regarding conflict between the VE testimony and the identified jobs.

**C. Remand for Further Proceedings is the Appropriate Remedy**

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The

Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits: (1) the ALJ must have failed to provide legally sufficient reasons for rejecting evidence; (2) the record must be fully developed, leaving no useful purpose for further administrative proceedings; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even if these conditions are met, the Court has the discretion to remand for further proceedings where the record as a whole creates serious doubts about a claimant's disability status. *Id.* Only in rare circumstances should a case be remanded for benefits. *See Treichler v. Colvin*, 775 F.3d 1090, 1100 (9th Cir. 2014).

The first step of the *Garrison* test is satisfied. At step two, the Court must determine whether the record "is fully developed, is free from conflicts and ambiguities, and 'all essential factual issues have been resolved.'" *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (quoting *Treichler*, 775 F.3d at 1101). Conflicts remain that an ALJ must resolve. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (emphasizing that resolving conflicts in testimony is a function solely for the agency); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) ("we are not triers of fact"). The Commissioner proffered potential inconsistencies, on which the ALJ did not rely, but which it is still appropriate for the ALJ to resolve. (*See* Dkt. # 13 at 11-13.)

Where conflicting evidence and essential factual issues remain unresolved, remanding for an award of benefits is inappropriate. *See Dominguez*, 808 F.3d at 407; *Treichler*, 775 F.3d at 1106-07. Accordingly, remand for further proceedings is the appropriate remedy.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings. On remand, the ALJ shall reevaluate Plaintiff's testimony, the medical opinions of Dr. Gollogly and Dr. Morgan, and proceed through the remaining steps of the sequential evaluation.

Dated this 8th day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge